## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAYVOLL SHONELL ORMOND,<br><br>Plaintiff,<br><br>- against –<br><br>REOPEN DIAGNOSTICS LLC and OPERATIONS LABWORKS INC. PANDEMIC REPSONSE LAB NEW YORK CITY,<br><br>Defendants. | Index No.:<br><br>**COMPLAINT AND DEMAND**<br>**FOR JURY TRIAL** |

Plaintiff RAYVOLL SHONELL ORMOND ("Plaintiff" or "Ormond"), by and through his attorneys, SHEGERIAN & ASSOCIATES, as and for his Complaint against Defendants REOPEN DIAGNOSTICS LLC and OPERATIONS LABWORKS INC. RESPONSE LAB NEW YORK CITY ("Defendants" or "Pandemic Lab") states and alleges on information and belief as follows:

### JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). This Court has supplemental jurisdiction over Plaintiff's New York State and New York City statutory causes of action prohibiting discrimination pursuant to 28 U.S.C. § 1367(a).

2.      Plaintiff asserts supplemental State and City law claims pursuant to the New York State Constitution, New York Executive Law § 296, *et seq.* and New York City Administrative Code § 8-101, *et seq.*

3.      Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, and application and enforcement of Defendants' equal employment opportunity ("EEO")

policies, affecting the hiring, promotion, work assignments, discipline and termination of its employees, may be found in this District.

4.      All conditions precedent to jurisdiction have occurred or been complied with including and in particular:

      a.    On May 9, 2022, Plaintiff Ormond filed a Charge of Discrimination ("the Charge" dated May 9, 2022) based on race and/or color and retaliation with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the adverse actions of which Plaintiff complains in this action. See attached hereto as **Exhibit A**, a true and accurate copy of the Charge dated May 9, 2022; and

      b.   A Dismissal and Notice of Rights was issued by the EEOC on December 23, 2022. Plaintiff Ormond duly filed his Complaint within 90 days of receipt of the Dismissal and Notice of Rights. See attached hereto as **Exhibit B**, a true and accurate copy of the Dismissal and Notice of Rights from the EEOC dated December 23, 2022.

## PRELIMINARY STATEMENT

5.      This is an action brought by Plaintiff RAYVOLL SHONELL ORMOND for discrimination based on race and/or color, retaliation and emotional distress resulting in his employment with Defendants being unlawfully terminated in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York Executive Law § 296, *et seq.* ("NYSHRL") and New York City Administrative Code § 8-101, *et seq.* ("NYCHRL"). Plaintiff brings this action against Defendants for economic, non-economic, compensatory and punitive damages, pre-judgment interest, and costs and reasonable attorneys' fees.

## PARTIES

6.     *Plaintiff*: Plaintiff Ormond is, and at all times mentioned in this Complaint was, a resident of the State of New York.

7.     *Defendants*: Defendants Pandemic Labs is, and at all times mentioned in this Complaint was, authorized to operate by the State of New York and the United States government and authorized and qualified to do business in the State of New York.

8.     *Relationship of Defendants*: All Defendants compelled, coerced, ratified, aided, and/or abetted the retaliation alleged in this Complaint, which conduct is prohibited under the New York State Human Rights Law and New York City Human Rights Law. All Defendants were responsible for the events and damages alleged herein, including on the following bases: (a) Defendants committed the acts alleged; (b) at all relevant times, one or more of the Defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining Defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for Plaintiff's damages; (c) at all relevant times, those existed a unity of ownership and interest between or among two or more of the Defendants such that any individuality and separateness between or among those Defendants has ceased, and Defendants are the alter egos of one another. Defendants exercised dominion and control over one another to such an extent that any individuality or separateness of Defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of Defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all Defendants were taken by employees, supervisors,

executives, officers and directors during employment with all Defendants, were taken on behalf of all Defendants, and were engaged in, authorized, ratified, and approved of by all other Defendants.

9.      Defendants both directly and indirectly employed Plaintiff as defined in the New York State Human Rights Law and New York City Human Rights Law.

10.     In addition, Defendants compelled, coerced, ratified, aided, and abetted the discrimination and failure to accommodate which is prohibited under the New York State Human Rights Law and the New York City Human Rights Law.

11.     At all relevant times mentioned herein, all Defendants acted as agents of all other Defendants in committing the acts alleged herein.

## FACTUAL BACKGROUND

12.     *Plaintiff's hiring*: Plaintiff Ormond, an African American male, was a dedicated employee of Defendants Pandemic Labs beginning on or about January 11, 2021 until Plaintiff was terminated on or about July 19, 2021.

13.     *Plaintiff's job performance*: Plaintiff Ormond was a diligent, hard-working employee until being terminated on or about July 19, 2021.

14.     *Plaintiff's protected status and activity:* Plaintiff was subjected to discrimination based on his race and/or color and retaliated against for his good faith complaints.

15.     *Defendants' adverse employment actions and behavior*: Plaintiff was hired by Defendants as the IT Manager on or about January 11, 2021. Plaintiff was the first in-house IT personnel hired by Defendants.

16.     In or around early January 2021, Plaintiff was informed by his direct supervisor, "David Stiles", Chief Operating Officer, "Cjuneyt Ener" and Director of Human Resources, "April

Bard" that he would be responsible for providing IT support to Opentrons Labworks, Inc. ("Opentrons"), the parent company of Operations Labworks Inc. Pandemic Response Lab New York City.

17.     Plaintiff Ormond was tasked with handling IT for over 200 individuals across Opentrons' four New York locations.

18.     Plaintiff's duties included creating user accounts, setting up equipment, managing vendors and implementing IT policies, without a team to assist.

19.     On or around January 13, 2021, Stiles informed Plaintiff that he would be responsible for handling all technology related tasks for Pandemic Lab's processing laboratory located in Rockville, Maryland, including its planning, execution and implementation in addition to ensuring all the New York locations were functioning efficiently.

20.     On or around January 18, 2021, Plaintiff Ormond started regularly traveling between New York and Maryland once a week for preparation work at the Maryland location before it could begin processing testing.

21.     During this time, Plaintiff was responsible for training approximately 15 to 25 new employees every week resulting in him feeling overwhelmed and exhausted.

22.     On or around March 1, 2021, Plaintiff requested that Stiles hire additional IT staff, citing that the current workload was too much for one person to handle, given the fast pace at which Defendants were opening new laboratories for COVID-19 testing in different parts of the country.

23.     Stiles replied that he would bring Plaintiff's request up with the upper management for consideration.

5

24.     In or around March 2021, Plaintiff Ormond was informed by Stiles about Defendants' plans to open locations in five more cities, and that Plaintiff alone would be responsible for the IT of these labs.

25.     Around the same time, Plaintiff complained Defendants need to hire additional IT personnel so he could build a team to assist him with his duties. He was told it was being looked into.

26.     On or about March 10, 2021, Badal and Ener informed Plaintiff that Pandemic Labs was in the process of acquiring a license for health inspections in New York State, and that Plaintiff was going to oversee the IT aspect of these inspections to secure licensing.

27.     Plaintiff Ormond became even more stressed as he was already feeling overwhelmed with work and traveling between the lab locations.

28.     On or about March 10, 2021, Plaintiff informed Ener and Stiles that he was feeling overburdened and burnt out due to being the sole IT support for the now approximately 400 employees of Defendants.

29.     After Plaintiff sought assistance, he was advised by Ener and Stiles to reach out to Human Resources ("HR") to assist with hiring additional IT staff.

30.     On or about March 15, 2021, Plaintiff was instructed to provide technological support to another company recently acquired by Opentrons without being offered additional compensation.

31.     On or about March 22, 2021, Plaintiff provided job descriptions and candidate resumes to Bard for the potential new hires.

32.     Plaintiff was limited to offering a salary range of $55,000 to $65,000 to new hires, with a requirement of 10 years of experience, which Plaintiff stated was not adequate to attract competent IT technicians with the demanded level of expertise. Therefore, Plaintiff requested an increase in the salary allowance per new hire, but Bard refused. This effectively prevented from hiring a qualified technician to assist him perform his expansive responsibilities.

33.     Later that day, Plaintiff Ormond complained of his frustrations to Stiles, mentioning the unequal treatment he received compared to other non-African American employees who were permitted to hire more personnel for higher salaries.

34.     In response, Stiles offered to change Plaintiff's title to Director of Information Technology and said he would discuss this issue with the Chief Operations Officer.

35.     On or around March 29, 2021, Plaintiff interviewed potential technician candidates.

36.     However, each candidate proposed by Plaintiff to HR for hire was rejected without explanations provided to Plaintiff.

37.     Plaintiff Ormond continued to work alone in the IT department, overwhelmed by the labs' growing needs in multiple locations.

38.     On or around April 1, 2021, The New York State Health Inspection took place, and the IT portion passed with no issues due to Plaintiff's efforts.

39.     Stiles was pleased with Plaintiff's performance and stated once more that Plaintiff's title would be changed to Director of IT.

40.     On or around April 5, 2021, while Plaintiff was doing lab build outs for Defendants' four new locations, Ener informed him that the location that he currently worked from was being moved, and that he would be responsible for setting up the new locations' IT.

41.     Later that day, Stiles and Ener informed Plaintiff that he would be in charge of the technology for the new Portland, Seattle and Los Angeles offices as well. In a disingenuous attempt to placate Plaintiff, Stiles brought up the promotion to Director of IT once more.

42.     On or around April 19, 2021, a "builds team" was hired to set up the new locations. Around this time period, "James White", a Caucasian male, was to set up the information technology for the new locations. Despite having less seniority and overall professional experience than Plaintiff, White was offered and accepted a higher salary.

43.     Stiles also informed Plaintiff that White would be working beneath him but reporting directly to Ener.

44.     On or around April 26, 2021, Defendants Pandemic Labs acquired a new company and grew to 530 employees. Plaintiff began handling all 530 employees' IT needs on his own.

45.     On or around May 10, 2021, White began handling the technology build outs for the new locations.

46.     On or around May 11, 2021, Defendants Pandemic Labs repeatedly rejected Plaintiff's candidates for hire that were submitted to HR.

47.     Plaintiff then sought assistance from his Managed Service Provider, CMIT Solutions, by requesting two (2) technicians assist him with daily IT responsibilities.

48.     On or around May 21, 2021, Stiles again mentioned changing Plaintiff's job title to Director of IT. No change was effected. However, Stiles mentioned that no definitive response from the COO had been received yet.

49.     On or around June 1, 2021, Ener hired the CMIT Solutions' technicians full-time.

50.     On or around June 8, 2021, Ener expressed remorse to Plaintiff in the presence of other employees for failing to provide the necessary resources for success sooner. Ener also praised the Plaintiff for his exceptional performance and strong work ethic since his hire in January 2021.

51.     On or around June 15, 2021, Ener made a similar statement to Plaintiff Ormond in front of other employees.

52.     On or around June 28, 2021, the CMIT technicians came on-board as full-time employees. They were both paid the same as Plaintiff.

53.     Plaintiff's title was never changed to Director of IT.

54.     Plaintiff was aware that newly hired Technicians working beneath him were paid the same as him despite having less experience and his tenure at the company.

55.     When Plaintiff expressed this concern to Ener, Ener dismissed it claiming that it was only for paperwork.

56.     On or around June 21, 2021, Plaintiff was informed he would report to Ener instead of directly to Stiles.

57.     On or around July 2, 2021, Plaintiff sent an email to Censia Pottorf ("Pottorf") requesting that his salary be reviewed in order for him to receive additional compensation based on the increased work he was required to complete since his hire.

58.     On or around July 9, 2021, Plaintiff was informed White received a promotion to Senior IT Manager and a raise. White was a Caucasian male with far less experience than Plaintiff, had been employed by Defendants Pandemic Labs for a shorter period and was less proficient in his position. He would now be rewarded by Defendants earning more than Plaintiff.

59.     On or around July 9, 2021, Plaintiff followed up on his request for a raise.

9

60.     On or around July 16, 2021, Ener asked to meet Plaintiff at the Long Island City location. Plaintiff temporarily left his backpack in his work area, but upon returning he saw Ener with it. During their walk to the conference room, Ener carelessly dropped Plaintiff's backpack on the ground.

61.     Once inside, Ener took out his laptop for a video call with Bard and informed Plaintiff that he was terminated from the company, citing Plaintiff's lack of communication and collaboration with Ener's team as the justification for the termination.

62.     Plaintiff was taken aback as this was the first time any concerns were raised about his communication skills or ability to perform his job duties. He had only previously received positive praise during his employment.

63.     Plaintiff countered that his communication had been excellent, which was evident by the successful opening of new labs outside of New York.

64.     Ener firmly responded that the termination was final and would not be reconsidered.

65.     As of July 19, 2021, Plaintiff's termination was effective via correspondence from Bard.

66.     *Economic damages*: As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to career, lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

67.    *Non-economic damages*: As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, discomfort, inconvenience, and mental and physical pain and anguish, in a sum to be proven at trial.

68.    *Punitive damages*: Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights such that punitive damages are warranted against Defendants.

69.    *Attorneys' fees*: Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

70.    *Mandatory service*: A copy of this Complaint was mailed on or around March 1, 2023 to the New York State Division of Human Rights, the New York State Department of Labor, the New York City Commission on Human Rights and the City of New York Corporation Counsel, thereby satisfying the notice requirements of the New York State Human Rights Law and the New York City Human Rights Law.

## FIRST CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, *et seq*., and its Amendments for Race and/or Color Discrimination - Against All Defendants**

71.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

- Defendants' conduct, as alleged, violated Title VII, U.S.C.A. § 2000e, *et seq*. and its Amendments. Defendants committed unlawful employment practices, including by the following bases for liability:

- Taking adverse employment actions against Plaintiff, such as discharging, barring, refusing to transfer, retain, hire, select, employ and/or otherwise discriminating against Plaintiff, in whole or in part, on the basis of Plaintiff's race and/or color in violation of Title VII, U.S.C.A. § 2000e, *et seq.* and its Amendments;

- Plaintiff's race and/or color was a motivating factor in, among other things, Defendants' decision to ignore Plaintiff's good faith complaints about discrimination, failing to promote Plaintiff to Director to IT, denying Plaintiff the ability to hire technicians to effectively manage the workload, terminating Plaintiff and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's race and/or color.

72.    As a proximate result of Defendants' willful, knowing and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress and physical and mental pain and anguish, all to his damage in a sum according to proof.

73.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

74.    Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles Plaintiff to punitive damages against Defendants.

## SECOND CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e***, et seq.***, and its Amendments for Retaliation for Engaging in Protected Activity - Against All Defendants**

75.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

76.     Plaintiff engaged in protected activities when he made multiple complaints of discrimination to his direct supervisor and Defendants' Pandemic Lab's management.

77.     Plaintiff made multiple complaints and experienced adverse employment actions as a result including, but not limited to, the following: to ignore Plaintiff's good faith complaints about discrimination, to fail to promote Plaintiff, overburdening and overwhelming Plaintiff with an increase in workload throughout his employment, fail to address Plaintiff's pay discrepancy, promoting a Caucasian male less experienced employee over him despite his stellar performance, denying his ability to hire additional technicians to effectively manage the workload and, ultimately, terminating Plaintiff.  Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

78.     By the acts and practices described above, Defendants retaliated against Plaintiff for engaging in protected activities in violation of Title VII.

79.     As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

80.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation, and damage to reputation.

13

**THIRD CAUSE OF ACTION**

**Violation of New York State Human Rights Law for Discrimination Based on Plaintiff's Race and/or Color — Against All Defendants**

81.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

82.     New York Executive Law §296(1)(a) provides that: "It shall be an unlawful discriminatory practice for an employer . . . because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

83.     Defendants' conduct, as alleged, violated the New York State Human Rights Law, including, but not limited to, N.Y. Exec. Law § 296. Defendants committed unlawful employment practices, including but not limited to, the following bases for liability:

      a.   Ignoring Plaintiff's good faith complaints about discrimination, to fail to promote Plaintiff, overburdening and overwhelming Plaintiff with an increase in workload throughout his employment, fail to address Plaintiff's pay discrepancy, promoting a Caucasian male less experienced employee over him despite his stellar performance, denying his ability to hire additional technicians to effectively manage the workload and, ultimately, terminating Plaintiff in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

14

b.  Harassing Plaintiff and/or creating a hostile work environment in whole or in part on the basis of Plaintiff's race, color and/or good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law §296;

c.  Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on, Plaintiff's race, color and/or other good faith complaints, and/or other protected characteristic or activity in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

d.  Plaintiff's race, color, and/or good faith complaints protected by the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296, were motivating factors in Defendants' decision to terminate Plaintiff's employment, not to retain, hire or otherwise employ Plaintiff in any position, and/or to take other adverse job actions against Plaintiff including, but not limited to, ignoring Plaintiff's good faith complaints, requests to hire new technicians to effectively manage the increasing workload and terminating Plaintiff;

84.  Defendants' conduct, as alleged, violated the New York Civil Rights Law, including, but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in his civil rights and/or to harassment.

85.  Defendants' acts and omissions constitute unlawful and willful discrimination against Plaintiff based on race and/or color in violation of the NYSHRL.

86.  As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

87.    As a direct and proximate result of Defendants' unlawful termination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## FOURTH CAUSE OF ACTION

**Violation of New York State Human Rights Law for Retaliation for Engaging in Protected Activity — Against All Defendants**

88.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

89.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any such activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practice forbidden under this article."

90.    Plaintiff engaged in protected activities when making multiple complaints of discrimination against Defendants to management, specifically his direct supervisors, which were blatantly ignored.

91.    Plaintiff made multiple complaints and experienced adverse employment actions as a result including, but not limited to, the following: increasing his workload and IT job responsibilities without a proper support staff, refusals to hire the requisite additional IT personnel despite the overwhelming workload for one IT employee, differing treatment compared to other employees, rejection of candidates proposed for hire by Plaintiff Ormond, sabotaging his hiring of new technicians by designating salaries too low to attract IT employees with the demanded 10 years of expertise; denying Plaintiff a promotion to Director of IT in response of his good faith

complaints and ultimately terminating him. Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

92.     By the acts and practices described above, Defendants retaliated against Plaintiff for engaging in protected activities in violation of the NYSHRL.

93.     As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

94.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

### FIFTH CAUSE OF ACTION

**Violation of New York City Human Rights Law for Discrimination Based on Race and/or Color — Against All Defendants**

95.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

96.     The New York City Administrative Code §8-107(1)(a) provides that, "It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

97.     Defendants' conduct, as alleged, violated the New York City Human Rights Law, including, but not limited to, § 8-101, *et seq*. of the New York City Administrative Code.

Defendants committed unlawful employment practices, including, but not limited to, the following bases for liability:

    a. Taking adverse employment actions against Plaintiff, such as discharging, barring, refusing to transfer, retain, hire, select, employ and/or otherwise discriminating against Plaintiff, in whole or in part, on the basis of Plaintiff's race, color and/or other good faith complaints in violation of the New York City Human Rights Law, including, but not limited to, §8-107(1) of the New York City Administrative Code;

    b. Terminating Plaintiff based on his race and/or color;

    c. Plaintiff was treated in a discriminatory and harassing manner by management and was not offered the same benefits and opportunities as other employees, such as the ability to hire a full staff of personnel or the ability to offer competitive salaries to potential hires. White, who was hired after Plaintiff Ormond, was offered a higher salary and more support despite having less seniority and experience;

    d. Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on, Plaintiff's race, color, other good faith complaints and/or other protected characteristic or activity in violation of the New York City Human Rights Law, including but not limited to, §8-107(1) of the New York City Administrative Code; and

    e. Plaintiff's race, color and/or good faith complaints protected by the New York City Human Rights Law, including, but not limited to, §8-107(1) of the New York

City Administrative Code, were motivating factors in Defendants' decision to

terminate Plaintiff's employment, not to retain, hire or otherwise employ Plaintiff

in any position and/or to take other adverse job actions against Plaintiff.

98.     Defendants' conduct, as alleged, violated the New York Civil Rights Law,

including, but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in

his civil rights and/or to harassment.

99.     As a proximate result of Defendants' willful, knowing, and intentional

discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses

of earnings and other employment benefits.

## SIXTH CAUSE OF ACTION

**Violation of New York City Human Rights Law §296, *et al*. For Retaliation For Engaging in Protected Activity — Against All Defendants**

100.     The allegations set forth in the foregoing paragraphs are re-alleged and

incorporated herein by reference.

101.     Defendants' conduct, as alleged, violated the New York City Human Rights Law,

specifically § 8107(7) of the New York City Administrative Code, and defendants committed

unlawful employment practices including retaliating against Plaintiff by terminating Plaintiff for

seeking to exercise rights guaranteed under the New York City Human Rights Law and/or for

opposing Defendant's failure to provide such rights, including the right to be free from

discrimination and harassment based on race/color, the right of reasonable pay and job

accommodation, and the right to engage in the interactive process, in violation of § 8107(7) of the

New York City Administrative Code.

102.    As a proximate result of Defendants' willful, knowing and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

103.    As a proximate result of Defendants' willful, knowing and intentional discrimination against Plaintiff, he has suffered and continues to suffer humiliation, emotional distress and physical and mental pain and anguish, all to his damage in a sum according to proof.

104.    As a proximate result of Defendants' creation of a hostile work environment based on discrimination that harmed Plaintiff, Plaintiff is entitled to compensatory damages.

105.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.  Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

106.    As a direct and proximate result of Defendants' unlawful termination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff RAYVOLL SHONELL ORMOND requests judgment against Defendants and respectfully requests that this Court:

(a)    Declare the discriminatory acts and practices of Defendants complained of herein violated Plaintiff's rights under Title VII, the NYSHRL and NYCHRL;

(b)    Grant Plaintiff actual, consequential, liquidated, punitive and any other damages that the Court may deem appropriate against Defendants;

(c)    Order Defendants to pay lost, foregone and future wages to Plaintiff Ormond

according to proof;

      (d)    Order Defendants to pay Plaintiff's reasonably incurred attorneys' fees, costs

and disbursements;

      (e)    Order pre-judgment and post-judgment interest on all damages awarded;

      (f)    Grant an award of punitive damages in an amount to be determined at trial; and

      (g)    Grant Plaintiff such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all issues of fact and damages stated herein.


Dated: New York, New York              SHEGERIAN & ASSOCIATES
        March 1, 2023

                                      By:    *Olivia Clancy*
                                         Olivia M. Clancy, Esq.
                                         90 Broad Street, Suite 804
                                         New York, New York 10004
                                         Tel.: (212) 257-8883
                                         Fax: (212) 804-7299
                                         oclancy@shegerianlaw.com
                                         *Attorney for Plaintiff*